We're going to call our third case of this morning, NRA SCH Corp, number 13-3371, Mr. Atkinsburg and Mr. McLaughlin. I read your calendar wrong. Take your time. Pardon me? I read your calendar wrong. Oh, wait a minute. Did I do it wrong? You did it wrong. It wouldn't be the first time. I'm sorry. I was just thinking bankruptcy, baby. I'm sorry. It's Pagliaccetti v. Kerestes, number 13-3140. I'm going to repeat that again so it's taken correctly. Pagliaccetti v. Kerestes et al., number 13-3140, Mr. Wiseman and Ms. Palmer. Apologize. That's kind of right. I thought I was going to clear it because the Widener students left and I figured it was time to talk habeas. May it please the court. I was just trying to jump the gun to back up. Excuse me. May it please the court. Michael Wiseman on behalf of Mr. Pagliaccetti and I would ask Judge Ambrose for three minutes. That's fine. I don't know that there's much debate that the jury instructions here violated due process. If the court would like, I can certainly go through that. Well, there may be some debate about that, but whether there is or isn't, how do you get past the point which is repeatedly made by your opponents and made in the magistrate judge's report and made by the district court that there were three elements to self-defense and the Commonwealth only had to disprove one of them. So even if it was misstated as to one, it's overwhelmingly shown that he could have retreated and that he didn't have a reasonable fear. So what's the good of harmless error? Sure, I can jump right to the harmless error. Of course, the question is under what standard are we looking at harmless error? Under the Chapman standard, which I propose is the appropriate standard given the appellate and effectiveness claim here, or is it under the Brecht standard? And that makes a huge difference. Of course, under Chapman, it's the Commonwealth's burden to show beyond a reasonable doubt that the error did not have an impact on the defense. Right, and I understood your briefing to say, yeah, sure, Brecht says it's the substantial and injurious effect standard. Yes. And yeah, sure, it says that that's what we should apply in habeas cases. But our case is different because this is an issue about appellate counsel's error. Now, help me understand why that makes a difference. Sure. Since appellate counsel's error is based solely, as I understand it, on a failure to object to what's alleged to be trial counsel's error. Well, right. Trial counsel neglected to, what I started out to say was I don't think there's any debate that the error, the instructions were an error and violated due process. Whether they were harmful or not, of course, is another discussion. Our view is that this, to my knowledge, is an issue of first impression. Clearly, Brecht governs harmless review, harmless error review in habeas corpus. However, when you deal with the question of appellate ineffectiveness for not raising the instructional error, Strickland, which, of course, has been in the law for 30 years, brings its own analysis that, in our view, trumps Brecht. And that, of course, is what is the effect on the proceeding? And Smith v. Robbins, which the Commonwealth cites in their brief, and which I have characterized as somewhat of a concession on that point, clearly states that the question under Strickland for appellate ineffectiveness is what is the outcome of the appeal? Why does it matter whether it's at the trial level or the appeal level for that? And you can make the same argument for trial error and say, well, it was ineffective assistance of counsel at the trial level not to object to that version of the jury instruction. Therefore, Strickland is in play. Therefore, it's a different standard. Therefore, it's not Brecht. Because the Strickland prejudice analysis overlaps with Brecht harmless error when it comes to trial counsel and effectiveness. Prejudice analysis also includes a concept of harmless error. So even if you can say that, on appeal, there should have been a reversal on the merits, the court can still consider harmless error. And so you're right back with harmless error at that level. That's where I think we disagree. Unfortunately, Strickland comes with its own analysis for trial court error, trial counsel error, which is Strickland, Edpug, and Brecht. Appellate counsel ineffectiveness under Smith versus Robbins very clearly says the question is what would the effect of appellate counsel's ineffectiveness have been on the appeal? All right. And even if you find reversible error, you can still say, but this is harmless error. It's not reversible error. You can say it's harmless, but the question is whose burden is it to prove it and by what standard? That's the whole point here. If you apply Brecht to that situation of appellate counsel ineffectiveness, then it's my burden to show serious and injurious harm. However, under Smith and Strickland, the court must look at what would the state appellate court have done if this error was properly preserved and presented to them, and if they had appreciated the instructional error, what they would have done with it? What would lead us to find beyond a reasonable doubt that the error was harmless? Mr. Russell, what would lead us to believe that the Supreme Court intended for different standards to apply in a habeas case to appellate versus alleged trial counsel error, particularly when the alleged appellate error is solely a failure to raise the alleged trial counsel error? It's got to be a separate analysis because, first of all, I have found no case, my opponent has cited no case, that holds to the contrary. This is an initial first impression as far as I can tell. How does that advance your argument that it has to be a different analysis? Why isn't the more logical inference to be drawn that since what we're talking about is the very same underlying error? We're not talking about the same underlying error. We're talking about different burdens of proof. The question this court has to answer, what the district court failed to answer, is what would have happened on the appeal had this instructional error been raised? What would have happened is if the appellate court got it right in the Superior Court, what would have happened is they would have said, okay, it is an instructional error. Now, you government have to show beyond a reasonable doubt that that error wasn't harmless. And our view is given the evidence in this case, they wouldn't have met that burden. The argument made at trial as to the justification for the shooting? That he thought that somebody had a gun in his waistband? Yes, there was certainly competing views of what transpired on that night, all of which I think were fairly viewed as being, as the magistrate used the phrase, fueled by alcohol. The victim had a .39 blood alcohol content. Mr. Pagliari testified to having drank eight or nine shots of vodka and beer. I think it's a fair assessment that people were pretty intoxicated at that time. All the witnesses said he was not intoxicated, right? Well, one of them didn't, I believe that's right. But, you know, these witnesses were not the most savory bunch themselves. They admitted to lying to the police about their own involvement in the incident. The bottom line is, I think, given all the circumstances, particularly the consumption of alcohol, this was a jury question for a properly instructed jury. But I don't want to lose this point, though, because to me, maybe I'm projecting here, but it seems rather clear that it is a different standard. You have to view appellate counsel and effectiveness differently. I've cited a slew of cases that said that. If you're the trial, you mean appellate counsel, not trial counsel? Appellate counsel and effectiveness, yes. As to trial counsel, the conviction here was for third degree murder, not first degree murder. Correct. He was indicted under what, second degree murder or first? It was first. He did a good job in beating, if you will, the first degree charge. That doesn't mean that he wasn't in error in failing to object to this instruction. And the court, in giving an instruction on the use of force and self-protection, one of the things that says you can't avail yourself of that defense if you are not free from fault in provoking or continuing the difficulty. With the requisite intent. With the requisite intent. And that was ultimately changed by Section 505 of the Pennsylvania Code. After Mr. Packard had his trial. After the trial. Correct. Even if we accepted your assertion that there's a different standard of proof, walk me through, if you would, how that overcomes the point which we started with in this discussion. Why is it that? Yeah. Why does it matter if there's overwhelming proof that he could have retreated? The magistrate who did a rather thorough review of the evidence himself says, we do not pretend that it's a simple matter to understand how the particular jury in this case determined the verdict. And, of course, he's referring there to the whole scene of a drunken argument outside of a bar. And, of course, I already mentioned that the alcohol issue played heavily. So you have a fight in a bar, an argument in a bar that goes outside. One person perceives a threat. It may have been unreasonable, but it's a jury question. And it's a jury question for a properly instructed jury on the provocation issue. That's always the case when you're looking at a harmless error, right? When you're saying this is not a problem. Sure, there may be a problem here. But it doesn't matter because you failed on another element. You failed on another element. And that's the assertion that's made here. In the abstract, you know, harmless error is always a fact-intensive analysis depending on the case. And I guess all I'm saying is this is not particularly complex. You have a drunken ballroom argument, spills out into the street. One person perceives a threat and reacts, obviously, to that. And the courts, both the magistrate judge in the report and recommendation and the district court judge, comment on, you know, it's completely illogical to believe that this was provoked and that he believed there was a problem because he shoots him when he comes, goes and leaves 20 paces away, et cetera. What's wrong with that as an analytical start? The magistrate was looking for logic from a person with a blood alcohol content of .39. That's almost four times the legal limit. It's more than four times the legal limit for driving. This person is highly intoxicated. To expect that person to act rationally or logically, I submit, is not reasonable. But that may be the reason he was convicted of murder three as opposed to murder one. Well, you know, Your Honor, that doesn't end the analysis here. Just because his lawyer beat the top count doesn't mean that he shouldn't have done better. Let's go back to the timeline again. You have the trial here was what day, 2002? Yes. And 505 was enacted when? Afterwards, I'm not sure. After the trial? Yes, after the trial. And so the instruction given at trial was identical to the instruction that was said to be exactly right by a court in Pennsylvania in 1986 in the Alvin case, right? Well, sure, but ignoring the 1991 holding of the Supreme Court of Pennsylvania that said this is the first time we're discussing what is required of the intent aspect of provocation. Right. But then what happened is that this issue really isn't brought up in the first appeal. It is brought up in the PICRA. Is that right? I'm sorry. It was brought up in the PICRA part of the proceedings here later on after trial? No. About the instruction? PCRA. PCRA. I'm sorry. PCRA. I thought I misheard. Ultimately, the Commonwealth courts determined that the instruction given at this 2002 trial was in line with Pennsylvania law. And don't we know that difference? No. First of all, it's 2004, the trial. I don't think that matters. Okay. It makes a difference. First of all, there's two levels of analysis. The incident happened in 2002, December of 2002. There's two levels of analysis as to why you want to know deference. First of all, as the magistrate correctly notes, the federal courts have an independent obligation to assess whether the prosecution's burden was improperly reduced by a bad instruction. I cited and discussed extensively Swift v. Horn, where this court rejected the very same argument. Did the magistrate judge even cite AEDPA at that point? Did the magistrate judge pay attention to the strictures of AEDPA in declaring that there was no deference? Given how much AEDPA is in this matter and how everybody is aware of AEDPA, I would venture to say he did. But forget what the magistrate judge did even. This court has to exercise an independent duty to review whether Mr. Pagliacci's constitutional right was violated by the German instruction. That's not a matter of state law. It wasn't a matter of state law, Swift v. Horn or Ware v. Horn, both of which rejected the same arguments. But when you say we have an independent duty, our independent duty is exercised through the AEDPA lens. 2254d tells us we have to ask whether it is contrary to or clearly erroneous application of federal law as determined by the Supreme Court of the United States. We're not a free-ranging safety out there looking at this. No, of course not. And I'm not suggesting that you are. But AEDPA doesn't mean that you abdicate all responsibility. Is there any AEDPA analysis along that line in the magistrate judge's R&R on this issue? Let me make another point about what the state courts did here. Is that a no? I'm sorry? Is there any AEDPA analysis in the magistrate judge's R&R with respect to this issue? Did the magistrate judge step through those 2254d rules? I do not know. Off the top of my head, I don't know if the AEDPA is mentioned in the big footnote he has where he discusses Winship. Even if it's not mentioned by name, is the analytical route followed? Yes. Was there any attempt to say this is contrary to or erroneous application of clearly established federal law by Supreme Court precedent? The answer is I don't know. And the reason is because the—and this was the point I was about to make—is that the Superior Court clearly applied incorrect state law. I mean, it ignored Samuel, which existed at the time that they cited Alvin. So it's sloppy judging, if you will, in that respect. It doesn't get it at all. Is Samuel a case about jury instructions or is it about sufficiency of the evidence? Well, it's about sufficiency, but it tells what the instructions need to include because that's what the statute requires. I mean, I quoted the language from Samuel, which is pretty clear. This is the first time that the Supreme Court of Pennsylvania had to discuss what was required by the provocation, the intent element of provocation. They did so, and in doing so, they said, yes, there's an intent element. But here's the point. I don't know what the PEA Superior Court did in this case. I don't know if they just said, well, Alvin covers this, or they on their own did their own due process analysis. The point is, even if they did a due process analysis, it's contrary to our unreasonable application of Winship because it reduced the prosecution's burden on this element. And if I could, what is, if we assume that you're correct, that there is a different standard of review for appellate error as opposed to trial counselors? Yes. We take that as a given. And yet we were to decide that the evidence as to a failure to retreat or reasonable belief of fear of death or serious bodily injury was such that it was overwhelming that neither of those elements could be met. Would the standard of review make a difference? Well, I think it would make a difference because I don't accept Your Honor's premise because Mr. Paglicetti said I didn't perceive that I had an ability to retreat. I'm asking you to accept the premise for the sake of discussion. It's a purely legal question. Assume that those other two elements couldn't be met. As a matter of law, does it make a difference? Yeah. I mean, if this court believes that Mr. Paglicetti failed on some other crime of self-defense, we lose. And we just don't get to the standard of review issue, right? But I think before you answer that question, you need to figure out what the proper standard is. Is it Chapman or is it Breck? And I think that makes a real difference here because it's such significantly different standards. Why? Why does that have to come first? That's what I'm trying to get you to help me with. Yeah. Why do we have to decide the standard of review question? If there's failure on the other two prongs. Because I think whether there's failure on the other two prongs goes back to how are you viewing this set of circumstances. So are you saying it doesn't? I'm not trying to play games with you. I really am trying to get to the bottom of whether your position is that standard of review makes a difference as to the harmless error analysis. It does. How so? Because how you view these facts, it matters on the other two prongs of self-defense or on the contested prong of self-defense. It matters what standard you're using, right? I mean, the reason the Supreme Court and Breck established this standard. Stick with me for a second. I'm sorry? Stick with me and tell me if I got this wrong. If we were to say, and help me out analytically, this is false. If we were to say, we assume without deciding that Mr. Pagliacetti is correct, that we're applying not Breck, but a higher standard in determining whether or not a pellet error here is problematic. Right. And now we assume that and we look at these two things and we say, the evidence here was such that the Commonwealth clearly carried its burden of proof without question. On the two self-defense prongs. On one or both of the other prongs. Right.  Of course. And we would never have decided the standard of review issue. Is that correct? That is correct. I guess my response more globally, though, is that given these circumstances, given these facts, given the nature of this dispute, the fight that is, the argument, that you can't make that finding, or shouldn't make that finding, I should say, if you apply Chapman. Because then it's their burden to show beyond a reasonable doubt, as opposed to my burden to show a substantially jury's impact. That's a world of difference. That's why the Supreme Court decided Breck and decided Fowler as it did. They wanted to make it harder for habeas petitions to win. But here we have a freestanding, different mode of analysis. And that's Strickland, effect on the proceeding, i.e. appeal, and Smith v. Robbins, which says, when you're looking at appellate ineffectiveness, the only question is, what would the effect have been on the appeal? Not on the trial. And that's what this case is about. We'll get you back on rebuttal then. Thank you. Ms. Palmer. Good morning, Your Honor. So may it please the court, I am Palmer for the Commonwealth. We're respondents, to which I'll refer interchangeably. No, I just said, Commonwealth is for work. It's a little simpler. Just going straight to the most recent issue of the standard. Just a factual question. The trial, did the Commonwealth focus on the provocation issue? No, it did not. And it addressed. Did the defendant focus on the provocation issue? No, the defendant's primary focus was avoiding a first-degree murder verdict, which was a very strong possibility in this case. And as we mentioned in our briefs, the focus was really more on the other prongs in the prosecutor's summation. Now, I take it, just to digress for a second, that the first-degree murder was, there was some testimony that Mr. Pagliacetti wasn't as drunk as he said. But there was a blood alcohol test done, wasn't there? My record, I would hate to put a number on it because I would hate to misstate the record on that point. But the police officers who dealt with Mr. Pagliacetti after the crime found him to be clear and cogent, such that. When was the testing for blood alcohol? I'm afraid I don't recall exactly what it was. And we don't dispute that he had been drinking a fair amount and was intoxicated to some degree. But for the purposes of his criminal liability, it does not play this free pass that the defense would propose. Also, just one procedural question. Yeah. The magistrate judge concluded that the instruction was given in error. And the Commonwealth didn't object to that. I'm just wondering why. At the objection stage following the R&R? Well, as this court's aware, it may affirm on any ground. And as the prevailing party, we do not respond to every R&R that contains portions of analyses with which the Commonwealth disagrees. It has not been realistic from a logistical standpoint. We just don't have the manpower to do it. And as an appellate matter, as this court may affirm on any ground, it's not incumbent upon us to do so. And to our knowledge, there's no authority requiring it. When we can, we do attempt to do so. And I think an attempt was made in this case, but in terms of filing a motion for leave to file a response to Mr. Pagliacetti's objections. But the former ADA handling this case was transitioning out of the office due to retirement. And no objections were filed by us in response to objections. But that certainly has no waiver or consequence for the purpose of this court's review. This court has three separate independent grounds on which it can affirm the judgment of denying the habeas petition. Is there a way to do it without addressing the standard of review, or are we going to get drawn into that inevitably? Because, as Mr. Wiseman says, there's such a gigantic difference between the Chapman standard and the Breck standard that you can't fairly say harmless error if you're applying the correct standard. Now, I don't know that I've done justice to his position, but that's what I take it to be. Right. He has been unable to cite any case, certainly not U.S. Supreme Court precedent, which he'd be bound to do, to propose such a remarkable shift in the standard of review. Strickland is clear. If ineffectiveness is the claim, then he needs to prove Strickland prejudice. And there have been many Supreme Court cases explaining the double deference due, and then in addition to that, appellate counsels do extra deference. And Breck applies across the board. It would be inconceivable. What is the basis? Well, when you say it's inconceivable, of course, his response is, wait a second, I did conceive it, and I'm telling you, Smith v. Robinson says what it says. Smith v. Robinson says what it says. Chapman says what it says. It speaks in terms of the way you need to look at appellate error, and those other cases talk about trial error, so you need to pay attention to the ones that talk about appellate error. What's wrong with his reasoning? Even if Smith v. Robinson says what he says it does, and we don't believe it does, that is not the source of law for this Court's review. It's Supreme Court precedent, and the Supreme Court has made clear the extra deference due ineffectiveness claims, which I might add, and I'm not sure it came through strongly enough in the party's briefing, but on PCRA appeal, the PCRA court pointed out there can be no claim of appellate ineffectiveness here because the trial court error claim was waived due to the absence of an abduction in the lower court. So not only was appellate counsel fully within his right to assess the potential claims to bring, but he could not bring a claim of trial court error because it was waived. So he's insisted on a freestanding due process claim all along. Which is not a bad claim if one accepts the notion that you really ought to instruct the jury on everything that the statute requires, right, which everybody seems to acknowledge didn't happen here. Now the Commonwealth Court in Alvin, excuse me, the Superior Court in Alvin said, well, good enough, but the argument being put to us is that's not good enough in light of Pennsylvania Supreme Court authority. Is he wrong about that? Yeah, he's very mistaken. The Supreme Court, the state Supreme Court has used the free from fault language throughout its case law as a most recent, I think, in 2012 or at least one of the most recent cases we saw. And Natividad specifically addressed an identical claim, which he dismisses as being inadequately detailed in its analysis. But that was a capital matter with many claims and the Supreme Court by necessity was concise in its analysis, but it squarely addressed the question of whether... It seems that the new jury instruction that's now been provocated does make intent an element of the Commonwealth's burden on provocation. A modification, however, to a jury instruction does not render the prior jury instruction deficient either under state law or as much less a federal constitutional matter. He's cited no authority for that position, nor can he. It's an aid to the trial judges and there will always be progression in our content, but... So it's not a due process problem if Pennsylvania state courts ignore statutory language? No, but there's, by the same token, there's no requirement of an identical tracking of the statutory language. And... Well, this isn't a question, we're not dealing with a question of it was paraphrased. It's just the trial judge simply left it out. Commonwealth hasn't ever argued before now, I don't take your arguing it now, that the trial judge used some different words but really covered the intent element. It just was not there, was it? Well, the trial court's instructions are read as a whole under Donnelly and the Supreme Court precedent that contemplates that trial instructions will not always cover every aspect that... Every element? Well, it is in the statute, but the instructions deal with intent and deal with the Commonwealth's burden. Throughout, the passage cited starts with the Commonwealth's burden, it ends with the Commonwealth's burden to prove beyond a reasonable doubt. It also bears repeating that this is a case where he's alleged a Winship violation, which is by definition brought in nature. And that's where the ADPA is designed for situations like this, where he's cited no case, Supreme Court precedent or otherwise, that addresses this kind of instructional error claim. Would we have a problem in applying the Brecht standard here, when Brecht speaks specifically in terms of substantial and injurious effect or influence in determining the jury's verdict? That's the language Brecht uses, in determining the jury's verdict. Do we create a difficulty if we try to say substantial and injurious effect on the outcome of the case on appeal? I mean, I hear Mr. Wiseman saying, yeah, that's a problem. Is that not a problem? And if it isn't a problem, why isn't it? If Brecht speaks in terms of the jury's verdict, why would we extend that to appellate review? Well, the standard applies, is the baseline where Strickland doesn't supply the standard. And he's asked for the best of both worlds, which makes no sense. He insists because by the very nature of it being an appellate counsel on effectiveness claim, he gets a free pass from the Strickland prejudice standard, and the double deference from ADPOT, which he flatly says does not apply, and there's no authority for that. And in addition, the Smith case, talking about the winnowing decision, doesn't apply.  But as Your Honor said earlier, even if it were a lower standard, it would not make a difference in this case anyway because of the lack of prejudice outlined by the courts below, the overwhelming evidence of guilt, and as to the other two prongs, which he really can't overcome in this case. What would you have to prove under Chapman? You'd have the burden, right? Now, what would your burden be? The burden would be harmless error beyond a reasonable doubt. Okay. And could we say beyond a reasonable doubt that you had proved that there's no way that the jury was confused here by the lack of intent on that other prong and that that didn't affect? Yes, and that it would not have affected, that it was harmless beyond a reasonable doubt because even if there were a problem with the intent component, he still has made no showing whatsoever as to the other two prongs, and those are very much part of the harmless error analysis. So he cannot say that this would have changed the jury's deliberation in any sense. The Commonwealth made a very strong showing on all three prongs, including provocation. I thought you said that the Commonwealth didn't really focus on provocation. Well, the evidence was there. The Commonwealth didn't highlight it, but in terms of the evidence of record, demonstrated that he pursued an unarmed victim out of a bar, shot him in the head and the heart from a distance of 20 feet. And there was, even in his own testimony, and I think that's another aspect overlooked by the presentation earlier, was that the magistrate and the district court were very careful to note, even if you credit Mr. Pagliacetti's testimony in full in support of his claim of self-defense, even so the non-prejudice is clear from the record. But we do believe it's important for the court to bear in mind the structures of subsection A of section 2254 and Priester, and those cases which talk about a state law claim. This was exclusively a claim of state law error. If you look at the pleadings in state court, the only reference to federal constitutionalizing is in a caption. There is no reference whatsoever either in his- They do make a due process argument, do they not? So he argued it as a function. His Winship claim was an automatic result of the supposed error of state law, which is why the Commonwealth- You don't have to give deference to Commonwealth court judgments. But his argument has always been that this is purely a function of the supposed error of state law, which is non-existent. So it cannot be the case that he can argue throughout, before every court, that merely by virtue of a supposed error of state law that has yet to be recognized in any forum other than in the magistrate's decision below. And the focus here has always been on the prejudice anyway, because there are so many grounds on which to deny relief, non-diligence being one of it. I think it's worth mentioning that his proffer makes no reference to dates or times of any attempted contact. He just states conclusorily that he's met Holland. I mean, it's boilerplate from Holland. There's no specificity of which parent, when did they call, even when he called. And he claims to have documentation that could easily have been proffered. Do you really want to get into that, though? Well, no, I'm just saying that the problem all along is he's been afforded the benefit of the doubt in many areas. And he did extremely well below. And the non-diligence is one aspect of affirmance, but the simplest is the non-prejudice and the harmless nature below. And we just ask your honors to affirm the judgment below. Thank you. Thank you. Mr. Wiseman. As you're coming up, what was the focus of trial of Mr. Pagliace's counsel? I mean, Mr. Pagliacetti, in my estimation, testified to a full and complete self-defense version of the events. Obviously, trial counsel, fearing a first degree conviction, focused his comments on trying to get that reduced to third degree. That doesn't mean, however, that there isn't before this court, as there was before the trial court, a valid, testified-to version of self-defense. He said, in my recollection, he said that he didn't feel he could retreat, and he also testified to having a fear of harm. He said he didn't feel he could retreat, but as soon as he shot the man, he ran down the street. So given that what actually happened showed that he not only could retreat, he did retreat, only after he killed the man, doesn't the I didn't think I could retreat statement fall to pieces completely? Well, I don't think the record is developed sufficiently at trial to know what the arrangement of people were. But the point is, he said his way back into the bar in order to get away from this was blocked by one of the McFarlanes. And then he shoots the individual from 20 feet, twice, and he then runs away. So he obviously could have retreated somewhere. And I don't know that the standard is an objective one of could he have retreated. I think the standard is he did. Well, he did. Obviously, he ran away. But I think the standard, for purposes of self-defense, is his subjective view of whether retreat was possible. Now, obviously, what actually happened should bear on an analysis of that, right? Objectively, absolutely it bears on it. But that's not the standard. I mean, he ran away. It wasn't somebody else who ran away. It was him who ran away. So clearly he thought he could run away. I'll concede the point. It was him that ran away. But that doesn't necessarily speak determinatively to what was in his subjective mind. And, again, these are jury questions. I don't think this is something that should be parsed out by a badly instructed jury years later. There's a few other points I really do want to get to. The double-deference standard is absolutely positive. We got no place in this case. As I cited in my brief, in my reply brief at page 12, double-deference applies to deficient performance. It doesn't apply to prejudice. Double-deference is counsel's choices through the prism of evidence, double-deference. When you're talking about prejudice, it simply has no application. I want that to be out there rather clearly. The application of Alvin, I'm going to go through them all. The pages 7 through 10 of my reply brief. Does double-deference apply when you're asking what appellate counsel chose to argue and not argue? Very much so. But we need a hearing for that, which has never been afforded. Well, when you say we need a hearing for that, appellate counsel chooses to raise certain arguments or not raise certain arguments. So all we know, appellate counsel is under the misimpression that Alvin was the law. We don't know why appellate counsel didn't raise this claim. We can only know that after the hearing. Which is why there's double-deference, right? Only I have a point. It's not double-deference on prejudice. That's my point. I understand there's not double-deference on prejudice, but your argument is counsel had to have done this. Had to have done this. Had to have raised the claim. Right. And the question is, do we owe double-deference to a decision that, you know, this isn't a problem under Alvin, and therefore you don't raise it? If we had a hearing and appellate counsel testified that I didn't raise this claim because I didn't think it was worthy or I thought the other claims were better or made some strategic choice, then yes, you know. Without that record. I'm sorry? Without that record, no double-deference. How can you have it? What are you deferring to? Oh, yeah, there's a cold record that just shows he didn't raise the claim. You don't know why he didn't raise the claim. There's no double-deference. Anyway, page 7 through 10 of my reply brief talks about why Alvin is not the law, hasn't been the law, and the cases cited by the Commonwealth simply don't elevate it to that point. Just quickly, 18PA consolidated statute section 103 makes this an element, you know, makes rebutting a properly raised offense of self-defense an element of the crime. So this is absolutely a Winship, Smith v. Horn, Laird v. Horn type of a situation. There is a due process error here, even if the magistrate didn't cite it. Mr. Pagliacetti, to my recollection, was not submitted to blood alcohol testing. It was the victim. How did they find it was .39? That was the victim. I thought I said the victim. Oh, the victim. And that was important because the magistrate is assigning all these logical actions to the victim who is. . . By the way, why wasn't he, why wasn't Mr. Pagliacetti have a blood alcohol test? Well, I could speculate about that. You know, maybe the police weren't interested in finding that out, but that speculation might not have a clear answer to that. I guess the last point I want to make is I think that, you know, I'm a trial lawyer too. I understand trial lawyers make decisions on the fly. I don't think the fact that trial counsel here chosen his closing remarks to save his client from a life sentence means that there isn't merit to the self-defense claim. He, you know, the merit or lack of merit stands on its own. And while you look at what counsel may have said as some evidence of, you know, what they were, you know, some evidence of what the case was about, I don't think it's determinative by a long stretch and that there still was, despite him having run away, there still was a bona fide properly raised self-defense claim here but for the improper instruction we would have prevailed on. Thank you. Thank you very much. Thank you to both counsel. Well done. Admire the court's endurance. No problem. We'll take a matter under advisement.